In re James R. WATKINS, Jr., Kathryn A. Lloyd–Watkins, Debtors.

Bankruptcy No. 97–11351–FM.

United States Bankruptcy Court, W.D. Texas, Austin Division.

Aug. 6, 1997.

Frank M. Laphen, Austin, TX, U.S. Trustee's Office.

Patrick C. Hargadon, Martinec, Hargadon & Wise, P.C., Austin, TX, for Debtors.

## MEMORANDUM OPINION

FRANK R. MONROE, Bankruptcy Judge.

The Court held a trial on the Motion of the United States Trustee to Dismiss for Substantial Abuse Under 11 U.S.C. § 707(b) on July 9, 1997 at 1:30 p.m. All parties appeared. Upon the record established at that hearing, the argument of counsel, the briefs of the parties and the Court's own independent research, this Memorandum Opinion is being issued as written Findings of Fact and Conclusions of Law under Bankruptcy Rules 7014 and 7052.

This contested matter is a core proceeding under 28 U.S.C. § 157(b)(2) and because it arises under 11 U.S.C. § 707(b). This Court, therefore, has the jurisdiction to enter a final order under 28 U.S.C. § 1334(a) and(b); 28

U.S.C. § 157(a) and (b)(1); 28 U.S.C. § 151 and the Standing Order of Reference in this District from the United States District Court.

## FINDINGS OF FACT

These Debtors filed their Chapter 7 bankruptcy petition on April 10, 1997. Mr. Watkins is a senior information systems specialist for Tracor Aerospace with a gross monthly income of $5,444.42. His wife is a nurse for the City of Austin Health Department with a gross monthly salary of $4,494.53. The combined gross income of these Debtors is, therefore, $9,938.95. Annualized their gross income is $119,267.40.

From these amounts of gross income, Mr. Watkins voluntarily had deducted by his employer the amount of $925.56 as additional retirement as of the petition date. Subsequently, and apparently in response to the United States Trustee's Motion to Dismiss, Mr. Watkins has amended that deduction to the amount of $160.56 per month. Mrs. Watkins, both on the petition date and presently, has deducted from her gross income on a monthly basis $624.00 in deferred compensation and $314.62 in voluntary retirement. These voluntary deductions total $1,099.18 per month.

The total monthly expenses originally set out by the Debtors on Schedule J are $5,080.15. Not surprisingly, after the United States Trustee filed his Motion to Dismiss, these amounts were modified upward to the sum of $5,608.07. The modifications primarily came from these sources:

1. Home maintenance was increased from $150.00 per month to $191.00 per month.

2. Medical and dental expenses, in excess of medical flex payments to the Debtors' employers of $304.18, were increased from $165.00 to $279.00 per month.

3. Automobile insurance was decreased from $158.08 to $111.00 per month.

4. Orthodontics was increased for these two adult Debtors from $120.00 to $135.00 per month.

5. A monthly child support payment of $400.00 per month which were due to expire very shortly after the filing of this petition has now been re-categorized as a potential future automobile installment payment for a car yet to be purchased.

6. Savings/IRA contributions of $300.00 per month have now been re-categorized as miscellaneous/unanticipated expenses.

7. Professional continuing education for Mr. Watkins has been increased from $74.00 per month to $489.00 per month.

Further, the Debtors filed this case only 15 days after they purchased a 1997 Plymouth Voyager Minivan with an alleged current market value of $25,000.00 [most probably on the advice of counsel]. Plus, the vehicle was conveniently financed for a period of 36 months with an extremely high monthly payment of $822.00. It is not very difficult to conclude that the Voyager was purchased and financed at such a high monthly payment in order that the Debtors monthly disposable income would be accordingly reduced and, therefore, the chances of their being forced into Chapter 13 would be much less.

The Debtors in their schedules also list a very detailed and exceptionally long list of camera equipment valued at what would be appear to be extremely low values. There are also listed 59 items of jewelry for Mrs. Watkins with nominal valuations. The list of miscellaneous household goods and "collections" totals 399 items. Mr. Watkins testified, very ambiguously, concerning why and how it is that they have ended up in bankruptcy with 18 listed credit card debts with a scheduled total claim amount of $87,972.74, or an average of $4,887.37 per credit card notwithstanding their combined gross annual income of $120,000.00.

The Court does not "buy" the testimony of Mr. Watkins that this came to be because of his expenses with his children by a former marriage, payment of child support, and maintenance on his home. One has only to look at the list of personal property to see a great number of reasons why these Debtors' credit card debt is so excessive.

## CONCLUSIONS OF LAW

The Court requested briefs on the issue as to whether or not Debtors can make volun-

tary contributions to retirement accounts, deferred income accounts, etc. and have those amounts deducted in order to determine their "disposable income" and, therefore, their ability to pay creditors under a Chapter 13 plan.

The Court is aware of the various cases attempting to define "substantial abuse" as that term is used in 11 U.S.C. § 707(b). See *In re Kelly*, 841 F.2d 908, 913–15 (9th Cir. 1988), and *U.S. Trustee v. Harris*, 960 F.2d 74 (8th Cir.1992), *Fonder v. U.S.*, 974 F.2d 996 (8th Cir.1992) looking primarily at the debtor's ability to repay the debts for which a discharge is sought. See also, *Green v. Staples (In re Green)*, 934 F.2d 568 (4th Cir.1991), for a totality of the circumstances analysis. See *In re Krohn*, 886 F.2d 123, 126–28(6th Cir.1989) essentially adopting the 9th Circuit *Kelly* case, but stating that other circumstances may also give rise to substantial abuse. There appears to be no controlling precedent in the 5th Circuit at this time.

 This Court will adopt a test which considers the totality of the circumstances with emphasis on the Debtors' ability to repay debts under a Chapter 13 Plan.

1) In this case the facts show that the bankruptcy petition was not occasioned by any type of calamity, disability, unemployment or sudden unexpected illness. The cause of this bankruptcy is that the Debtors incurred charges on their multiple credit cards over a period of several years prior to the filing of the bankruptcy which were primarily in the nature of consumer purchases and which far exceeded these Debtors ability to repay according to the terms of the credit card agreements. Stated another way, these Debtors have been living beyond their means by using their credit cards.

2) The Debtors' proposed family budget is unreasonable and excessive for the following reasons. The creditors should not be required, and are not required under current law, to see that the Debtors have put aside sufficient funds for their retirement. The Debtors have in existence substantial assets already set aside for retirement. According to the amended Schedule B, these Debtors have a Tracor Retirement which Mr. Watkins is entitled to at age 65 which at this point

would pay him $1,852.69 per month. He has $9,382.07 in his Tracor 401K plan. Mrs. Watkins has an Austin City Employment Retirement Plan totaling $86,099.22. And, there is a PEBSCO deferred compensation plan with a present balance of $80,018.11. Presumably these amounts were set aside while the Debtors were running up $87,-972.74 of credit card debt. Why the Debtors should be allowed to continue this arrangement far exceeds the reasoning ability of this Court. In addition, these Debtors, based upon their earnings, will be entitled to the full amount of Social Security at retirement. In addition, they will qualify for Medicare and all of the other government programs for which we all pay high taxes.

Under these circumstances, the Debtors' attempt to insulate from their creditors an additional $1,099.00 per month in voluntary retirement contributions is unreasonable. Further, such deductions are simply not allowed by current law. See *In re Harshbarger*, 66 F.3d 775 (6th Cir.1995), *In re Cornelius*, 195 B.R. 831, 835 (Bankr.N.D.N.Y.1995), *In re Festner*, 54 B.R. 532, 533 (Bankr. E.D.N.C.1985), *In re Fountain*, 142 B.R. 135, 137 (Bankr.E.D.Va.1992), *In re Cavanaugh*, 175 B.R. 369, 373 n. 3 (Bankr.D.Idaho 1994), *In re Ward*, 129 B.R. 664, 668 (Bankr. W.D.Okla.1991). That money cannot be excluded from disposable income.

$1,099.00 per month times 36 months would be a payment of $39,564.00 towards total unsecured debt of $102,694.99 or a 38.5% dividend to unsecured creditors under Chapter 13 from this source alone.

3) There are problems with the Debtors' budgeted expenses. $489.00 of monthly continuing education expenses seems unreasonably high for an individual in his early 50's who must be presumed to already have a fairly good working knowledge of his field to be in the position he is in. Granted, Tracor apparently does not pay for its employees continuing education and Mr. Watkins' position as a senior information systems specialist requires him to be current with regard to his knowledge and expertise. However, the Court doubts the Debtor's testimony that

that will require $489.00 a month over the next three years.

The Debtors' transportation expenses are also unreasonable. Yes, they live in Bastrop, Texas, approximately 30 miles from Austin, Texas where they both work. The testimony, however, was that they leave a car in town and both come to and from town in the same vehicle. Their scheduled general transportation expenses are $530.33, presumably gas, oil, repairs, etc. They have also included an additional $400.00 for a proposed new vehicle if, as and when it is necessary to buy one. And, we have the $822.00 a month installment for the $25,000.00 vehicle purchased 15 days before they filed Chapter 7. Taken together, this is these is an unreasonably high amount of their income devoted to transportation. Plus, the proposed second car payment is at this time speculation.

4) Clearly, the Debtors' Schedules I and J, (their Statement of Current Income and Expenses) did not reasonably and accurately reflect their true financial income when the case was filed. That is because they are substantially different as amended.

5) The good faith of the Debtors is also subject to question. Accordingly to their schedules, the Debtors incurred a debt of $25,662.00 as a result of their purchase of a 1997 vehicle just 15 days prior to filing bankruptcy. Clearly they knew they were going to file bankruptcy when that debt was incurred. By using 36–month financing, the monthly payments on the vehicle are at an extremely exaggerated amount; and in an era when 5–year financing for new vehicles is commonplace, this should be viewed as unusual. The resulting $822.00 monthly payment shows an attempt by the Debtors to maximize their expenses improperly just prior to filing the Chapter 7 case in order to hopefully enhance their ability to defend a Motion to Dismiss for Substantial Abuse. This is quite simply a case in which the Debtors ran up consumer debts over a period of several years far in excess of their ability to pay and now they simply do not want to repay them. Under the circumstances, the Court doubts the good faith of the Debtors in filing this Chapter 7 proceeding.

Accordingly, for the reasons stated in this Memorandum Opinion, the Court concludes that the United States Trustee has met its burden of proof under 11 U.S.C. § 707(b) and has adequately proven by a preponderance of the evidence that the Debtors' filing of this case is, in fact, a substantial abuse of Chapter 7. The U.S. Trustee's Motion to Dismiss must, therefore, be granted. An Order will be entered granting the U.S. Trustee's Motion to Dismiss provided, however, the Debtors will be given ten (10) days from the date of that Order to convert to a case under Chapter 13 should they so desire.