In re Richard McDONALD and
Nancy McDonald, Debtors.

Bankruptcy No. 197–13828–352.

United States Bankruptcy Court,
E.D. New York.

Oct. 20, 1997.

Tracy L. Klestadt & Associates by Wayne D. Holly, New York, NY, for Debtors.

Office of United States Trustee by Ingrid Schumann, Garden City, NY.

## DECISION

MARVIN A. HOLLAND, Bankruptcy Judge.

The purpose of this decision is to expand upon the reason set forth in the record of the proceedings held before me on September 11, 1997, in which I denied the motion of the United States Trustee motion to dismiss this Chapter 7 case pursuant to 11 U.S.C. § 707(b). The facts set forth herein are taken from the moving papers, the responsive papers, and the colloquy with counsel at the hearing.

The United States Trustee moves to dismiss this Chapter 7 case pursuant to 11 U.S.C. § 707(b) on the grounds that the granting of relief would be a substantial abuse of the provisions of Chapter 7.[1] The grounds for the United States Trustee's motion appear to be: (a) that the Debtors' budget shows a $400 monthly excess of income over expenses, and (b) the total debts which the Debtors are seeking to discharge, in the approximate amount of $10,000, could be fully paid with the $400 budget surplus in a 36–month Chapter 13 plan—a repayment capacity further evidenced by the Debtors' pre-filing payments on a "pension loan."

Prior to the filing of the petition, from May of 1994 through late June of 1996, Debtors had voluntarily participated in a Budget and Credit Counseling Services Program (hereinafter "BCCS Program") through which they made payments to their creditors. Transcript dated September 11, 1997 ("Tr.") at 3. They were paying the approximate sum of $365 per month under supervision of the BCCS Program until Mr. McDonald became disabled in late 1996. Prior to his disability, the Debtors had paid their creditors approximately $6000 through the BCCS Program.

---

1.  11 U.S.C. § 707(b) provides: After notice and a hearing, the court, on its own motion or on a motion by the United States Trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

*See,* Debtors' Reply and Opposition To Motion of the U.S. Trustee To Dismiss Under 11 U.S.C. § 707(b) at ¶¶ 13—14.

When asked by the Court why the Debtors did not try the avenue of a Chapter 13 plan which would have stopped the accrual of interest on their unpaid debt, counsel responded:

> "Well, Your Honor, the debtor [*sic*] basically I think reached a point after struggling to pay creditors since early of '94—and actually even before then—where they just looked at provisions of Chapter 7 under fresh start.
>
> The debtors have been struggling for approximately five years attempting to pay down this debt. They voluntarily participated in the BCCS program. . . .
>
> So after making five years of attempted payments, Your Honor, I think they finally gave up saying 'Look, we've tried, and tried, and tried, and we can't maintain a minimal standard of living.' We're talking about a family of five with three children, so I think that eventually after five years or so they turned to the fresh start provision of Chapter 7."

Tr. at 3–4.

The Court then raised the issue of whether the $400 a month surplus could be used toward funding a Chapter 13 plan—noting that, even allowing for 25 percent of that surplus to be used for unforseen contingencies, there would still be $300 available for a Chapter 13 plan. The Debtors' attorney responded:

> "Your Honor, if I understand what appears to be disposable income of $474 really doesn't exist. We amended the schedules. We have been back and forth numerous times trying to locate where that money is and what I've concluded is that the money is being spent on various intangibles [*sic*] things you can't plan for and other various expenses which are attendant to routine living in which we really couldn't articulate in the schedules and just by best efforts, you're talking about birthdays, haircuts, holidays, we're talking about field trips.

In fact, the original 341 meeting was adjourned because the debtor was participating on a field trip with his children in school. As I understand, these things come up with some degree of regularity such that it dissipates what appears from the schedules to be disposable income, it really doesn't exist and that's the reason I attached the debtor's [sic] bank statement to the original motion to demonstrate to the Court and to the Trustee, that beyond our statements, this money doesn't exist."

Tr. at 4–5.

That statement of counsel has an independent significance. All too frequently in this district, the statement of income and expenses, which is required to be filed by an individual debtor, is nothing more than a "working backwards" from stated income in an attempt to show to the Court and to the creditors that there is nothing disposable. In other words, debtors "guesstimate" their expenses by first taking their income and then adjusting the amount of itemized expenses until no disposable income remains. This "procedure" is often exposed when an amendment of their Chapter 13 plan is required, and the debtors are able to come up with "previously undiscovered disposable income." The statement of counsel quoted above indicates that these Debtors and their attorney would not resort to such impropriety, even in the face of their desperate situation. For this, not only are they to be commended, but their statements are to be given "great weight".

█ The Debtors' schedules show that they have three children, ages eleven, nine, and seven. Their statement, that the $400 a month that cannot be fitted into the categories called for in the required budget, will be accepted as fact by this Court because: (a) the Debtors' credibility has been demonstrated by their decision to not attempt to "twist the facts" to their own benefit, (b) the Debtors' best efforts to repay creditors without supervision of the United States Bankruptcy Court until Richard McDonald became disabled, and (c) the presumption in favor of granting the relief requested by the Debtors contained in 11 U.S.C. § 707(b).

With regard to the monies that the Debtors have been using to repay the pension loan of Richard McDonald, the Debtors' attorney explained that the proceeds of that loan had been utilized to buy a car to provide needed transportation for the family, and to pay off a then existing credit card debt—not for expensive living. At the conclusion of the hearing, after pointing out that in 12 years on this bench, I had never before been presented with a motion pursuant to 11 U.S.C. § 707(b), I stated:[2]

"I am uncomfortable about dismissing a Chapter 7 case on a standard that's articulated only by the words, substantial abuse, without a Congressional definition of substantial abuse without congressional guidelines as to what constitutes substantial abuse and without a controlling precedent in the second circuit.

Since, particularly motions of this type, have never been made by the U.S. Trustee's office earlier, I just don't think it's fair to this debtor to say 'Okay you're going to be the ginny [sic] pig, there is no way that you could have earlier determined what substantial abuse is in this circuit, but we are going to say that you should have known that substantial abuse constitutes A, B, and C and since you didn't follow what we now think you should have known when you filed, we're going to dismiss your case.' I just don't think that's fair.

I think that were I the debtor in that position, I could only conclude that there's no justice in the judicial system. I'm going to deny the motion to dismiss for substantial abuse for all the reasons articulated and for the further reason that I don't know what substantial abuse means.

I am not unmindful of Judge Crystals [sic] decision in the case of In Re: Love[3] which I commend anybody who has to consider section 707(b) and although in In Re: Love he denied a motion to dismiss under 707(b), it was brought before the U.S. Trustee system was in place, he denied his own sua sponte motion to dismiss.

It's a two page decision that I think anybody who is involved in Chapter 7 should spend a rewarding two minutes reading. It wouldn't take more than two minutes.

I'm going to deny the motion only because my gut and the feeling in my gut tells me that it's just not fair in what is a test case in this district to impose those severe sanctions against the debtor. I'm aware that in many, many test cases where there's no precedent and where the standard for the relief has been undefined, many test cases while define a standard but refuse to impose the penalty or the sanction of the person involved on the grounds that there is no way that the person involved could have possibly anticipated which way the standard would be set.

And there's no way I can grant your motion without the dire consequences to this debtor of dismissing on a 707(b) motion and accordingly I have no choice but to deny. Thank you."

Tr. at 11–12.

There is an additional reason to deny the § 707(b) motion which was not articulated at the hearing. The Code and the legislative history both leave no doubt that Chapter 13 is to be purely voluntary: § 303 precludes an involuntary Chapter 13; a Chapter 13 debtor is given the unrestricted right in 11 U.S.C. § 1307(a) to convert a case to one under Chapter 7 at any time; § 1307(b) directs the court to dismiss a Chapter 13 case on request of the debtor made at any time—so long as the case had not previously been converted under 11 U.S.C. §§ 706, 1112, or 1208. See, H.R.Rep. No. 595, 95th Cong., 1st Sess., at 120 (1977) (discusses the need for voluntariness in the context of the prohibition against involuntary servitude found in the thirteenth amendment and other policy considerations). By moving under § 707(b) on the grounds that the Debtors have disposable income which might be available for a Chapter 13

---

**2.** In setting forth the following portions of the transcript, I endorse only the substance of what was reported and not the punctuation, misspellings, or obviously misunderstood or omitted wording.

**3.** See, In re Love, 61 B.R. 558 (Bankr.S.D.Fla. 1986) (Judge A. Jay Cristol). [Footnote added.]

plan, the United States Trustee compromises the voluntary nature of Chapter 13.

Since 11 U.S.C. § 707(b) does not articulate the parameters of "substantial abuse", I feel that it would be wrong for me to interpret that section so broadly as to authorize it to be used to coerce debtors into a proceeding under a chapter that Congress expressly intended to be exclusively voluntary.

Furthermore, the policy of the United States Trustee, which the instant motion seeks to have me adopt, is easily frustrated by a debtor who might solicit an involuntary case. By its terms, § 707(b) is unavailable in involuntary cases. Were I to decide this motion in favor of the United States Trustee, there would be absolutely nothing to prevent these Debtors from immediately seeking out three creditors to file an involuntary petition on their behalf. The ludicrous result of this hypothetical, but highly possible scenario, simply serves to highlight the illogical nature of the grounds pursuant to which the current motion has been made.