In re Kenneth **FAULHABER** and Dawn Faulhaber, Debtors.

Bankruptcy No. 98–41211.

United States Bankruptcy Court, E.D. Texas, Sherman Division.

Oct. 7, 1999.

Robert E. Barron, Nederland, TX, for debtor.

Lisa L. Lambert, Tyler, TX, for United States Trustee.

### OPINION

DONALD R. SHARP, Chief Judge.

Now before the Court for consideration, pursuant to regular setting, is the United States Trustee's Motion To Dismiss For Substantial Abuse. This opinion constitutes the Court's findings of fact and conclusions of law required by Fed.R.Bankr. Proc. 7052 and disposes of all issues before the Court.

### FACTUAL AND PROCEDURAL BACKGROUND

Kenneth Faulhaber and Dawn Faulhaber, (the "Debtors"), initiated this bankruptcy proceeding by filing a petition for relief under Chapter 7 of Title 11 of the U.S.Code. The Trustee filed a timely Motion to Dismiss Case for Substantial Abuse Under 11 U.S.C. § 707(b) And For Lack of Good Faith (the "Motion") seeking dismissal of the case or conversion to a proceeding under Chapter 13 or Chapter 11 of the Bankruptcy Code. Following a trial, the parties were provided an opportunity to file briefs, after which the Motion was taken under advisement.

### DISCUSSION

Pursuant to 11 U.S.C. § 707(b), the Court "may dismiss a case filed by an individual debtor under this chapter whose

debts are primarily consumer debts [1] if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor." 11 U.S.C. § 707(b). The Code is silent as to what constitutes "substantial abuse", hence it has been judicially defined. Several Circuit Courts and numerous Bankruptcy Courts, including this Court in recent unpublished rulings, apply "the totality of the circumstances test" in order to determine whether dismissal in a particular debtor's case would constitute "substantial abuse" of the Code. *See First USA v. Lamanna (In re Lamanna )*, 153 F.3d 1, 4 (1st Cir.1998); *In re Krohn,* 886 F.2d 123, 126–127 (6th Cir.1989); *In re Green,* 934 F.2d 568 (4th Cir.1991); *In re Lampkin,* 221 B.R. 390, 392 (Bkrtcy. W.D.Tex.1998); *In re Watkins,* 216 B.R. 394 (Bkrtcy.W.D.Tex.1997); *In re Laman,* 221 B.R. 379, 381 (Bkrtcy.N.D.Tex.1998); *In re Heasley,* 217 B.R. 82, 87 (Bkrtcy. N.D.Tex.1998). Other Courts focus on a debtor's ability to repay [E.g. *In re Attanasio,* 218 B.R. 180 (Bkrtcy.N.D.Ala.1998); *In re Walton,* 866 F.2d 981 (8th Cir. 1989) ], including the Bankruptcy Court for the Western District of Texas. *See In re Fitzgerald,* 155 B.R. 711 (Bkrtcy. W.D.Tex.1993) [2]. Still others seek a showing of bad faith. There is no controlling precedent in the Fifth Circuit. The "total-ity of the circumstances" test seeks to answer the question of whether a debtor attempts to obtain an inequitable discharge at the expense of the debtor's creditors. See *Green v. Staples (In re Green)* 934 F.2d 568, 572 (4th Cir.1991) [3]; *Krohn, Supra* at 126.[4]

The ability to pay inquiry focuses on an accurate determination of Debtor's income and an inquiry into whether expenses are excessive or unreasonable considering the Debtor's circumstance. The question of bad faith is a far more subjective inquiry and the principal factors other courts have considered are;

(1) Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;

(2) Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to pay;

(3) Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition; and

(4) Whether the petition was filed in good faith [5]. *In re Green,* 934 F.2d 568, 572 (4th Cir.1991) citing to *In re Strong,* 84 B.R. 541, 545 (Bkrtcy.N.D.Ind.1988). The *Laman* Court also considered the debtor's eligibility for relief under Chapter 13, whether the debtor's expenses could be reduced without depriving him of food,

---

1. The parties stipulated prior to the hearing that the debts are primarily consumer debts.

2. The Fitzgerald Court adopts the 9th Circuit's rule from *In re Kelly,* 841 F.2d 908 (9th Cir.1988) in which ability to pay is the "primary" factor in a "substantial abuse" analysis and Chapter 7 should be a debtor's "last resort". It is noteworthy that one of the factors the Court employed in ruling on whether the Chapter 7 was substantial abuse was whether a debtor availed himself of, for example, consumer credit counseling. The testimony that Kenneth Faulhaber gave at the trial reflects that he considered a consolidation loan, Chapter 13 and liquidated otherwise exempt assets to pay his creditors.

3. In *Green,* the Court held that solvency, the fact that a debtor was found to have income in excess of his necessary expenses, is not alone sufficient to support a finding of substantial abuse of Chapter 7. *Supra. at* p. 572.

4. A poetic description comes from the Congressional Record of the 1984 Amendments to the Bankruptcy Code in which the purpose of the amendments to Title III was described as ensuring that "the 'fresh start' does not become a 'head start' ". 130 Cong.Rec. S.8891.

5. In this context, good faith refers to "subjective good faith." That is, a determination of whether the debtor was motivated by a genuine desire to deal with an intolerable debt load fairly and equitably so as to relieve him of an oppressive debt burden and allow him to move post-bankruptcy in a productive manner.

clothing, shelter and other necessities, whether the debtor enjoys a stable source of future income. *In re Laman, Supra* at 381. None of these lists is meant to be exhaustive, because of the fact based nature of the inquiry. The test, as its name suggests, is adaptive and the Courts consider many types of reasonable mitigating factors.

██ The first issue to be dealt with is the uncertainty concerning the Faulhaber's marital status. On the filing date, the Faulhabers were married and have been married for approximately ten (10) years. However, there is a divorce action pending which may or may not result in a termination of their marriage. There was considerable discussion at the hearing concerning whether the financial analysis should be based on a projected post-divorce budget or whether the income and expense analysis should combine their income and expenses. In closing argument, counsel for the Faulhabers acknowledged that the combined expense and income analysis was proper since it is the condition that exists on the date of the petition. Counsel also insisted that the result would be the same whether one did a combined analysis or a projected analysis based on a divorce. This Court finds that the Faulhabers have filed a joint bankruptcy case; that they were married on the date of the petition and as of the date of the hearing. This Court cannot speculate on whether their divorce will ever become final and if so, what type of division of property rights a Texas family court might see fit to impose.

Mr. Faulhaber is the primary earner for the family. Tax returns indicate that in 1997 he earned $87,450.00 and in 1996 he earned $85,679.00. Mr. Faulhaber argues that his income is down substantially, and the Court agrees that he has had some decrease in earned income. However, the evidence clearly reveals that as of October 31, 1998, (the date of the last earnings' statement available prior to the petition date) his earnings were at least $5,980.00

per month. The Court accepts that as a minimum, Mr. Faulhaber has $5,980.00 per month in gross income. Mrs. Faulhaber testified that she earned $500.00 per month from her part-time job for a total of $6,480.00. Using this figure to analyze their ability to pay is certainly not unfair to them since it does not take into account the $4,413.00 per month in a structured settlement annuity she will begin receiving on January 1, 2000.

The Faulhabers had some difficulty in filing an accurate budget in this case. Their income and expense statement filed with the Petition was amended as soon as the Trustee filed the instant Motion to Dismiss. That income and expense statement was again amended the day before trial and the Court is convinced that the Faulhabers have listed unreasonable and unnecessary expenses.

██ The Court's inquiry focuses on adjustments that should be made to the Faulhabers' latest budget prepared and submitted the day before the trial of this Motion. There are certain adjustments that simply must be made to arrive at a fair assessment of the ability to repay. Mr. Faulhaber lists his income at $5,420.00 per month and Mrs. Faulhaber's income at $500.00 per month. The earnings' statement dated October 31, 1998, clearly shows that his income should be listed at $5,980.00 per month for an increase in gross income of $560.00 per month. Turning to the expenses, the adjustments that must be made are the deletion of the $325.00 paid into a 401K plan, the reduction of the listed food expense from $758.00 per month to $480.00 per month which is certainly adequate for a family of three. And a reduction of the $285.00 in charitable giving. Although § 707(b) clearly prohibits the Court from taking into consideration past donations or continuing donations in the nature of charitable giving, it was obvious from the trial of this matter that Mr. Faulhaber was not dealing with past donations or continuing donations. His past or continuing dona-

tions could not possibly exceed $85.00 per month and he proposes to increase that contribution to $285.00 per month. While Congress evidenced its intent to protect a debtor's right to continue a pattern of charitable giving, it certainly did not open the door for a debtor to add a large charitable contribution figure to his budget and then appear in Court with the explanation that he has no records to support such new found generosity and he simply donates the additional money in cash. The Court finds that this item must be reduced by $200.00. The Debtor shows a monthly expense for a time-share condo of $191.00. There can be no justification for this Debtor to continue to pay for that kind of vacation facility at the expense of his creditors. That $191.00 must be deducted from his budget.

In addition, the Debtor shows $380.00 per month in legal fees but the testimony indicated that those legal fees will be fully paid after four monthly payments of $380.00.

Since Debtors' budget showed an excess of expenses over income of $1,042.00 per month, the adjustments outlined above indicate a surplus for the four months that the legal fees are being paid of $497.00 per month and then the surplus increases to $877.00 per month once the legal fees are fully paid. The evidence indicates that these adjustments do not constitute a stringent or bare bones budget that creates any hardship on these Debtors. On the contrary, it is a very generous budget that allows them a quite comfortable lifestyle. Since the total unsecured debt is stipulated to be $78,706.00, Debtors obviously have the means to pay a significant portion of that debt over a relatively short period of time.

█ The above calculation does not take into account the fact that Mrs. Faulhaber will start receiving $4,413.00 per month from a structured settlement annuity on January 1, 2000. The annuity is claimed as exempt under 11 U.S.C. § 522(d)(11). The United States Trustee

filed an objection to the exemption averring that the structured settlement annuity did not qualify under § 522(d)(11) then withdrew the objection. An annuity that qualifies as exempt under § 522(d)(11) may be used hypothetically in calculating disposable income (See *Stuart v. Koch* (*In re Koch*), 109 F.3d 1285, 1289 (8th Cir. 1997)). Obviously, when that additional income is factored into the equation, Debtors will have no problem paying their debts in total. The Court recognizes that future events may dictate a change in the Debtors' financial situation if they go through with their expressed intent to get divorced. However, that is far from a certainty and the impact that has on their financial situation is not certain. In the event that those subsequent events creates such an adverse impact that Debtors need further relief, either individually or collectively, it is certainly available to them.

Aside from a strict ability to pay analysis, other courts have looked at various factors dealing with the Debtors' conduct in the handling of their Chapter 7 proceedings and at their apparent motivation for filing a Chapter 7 proceeding. In this case, Debtors' portrayed themselves as being caught up in unexpected and uncontrollable circumstances; primarily in connection with the devastating personal assault Mrs. Faulhaber suffered in 1988. While one cannot overestimate the impact that this horrible incident may have had on Mrs. Faulhaber, the fact remains that the Debtors' financial situation was created wholly by them subsequent to the occurrence of the assault. The evidence indicates that the Faulhabers increased their mortgage obligation by something over $50,000.00 in the six months immediately preceding their filing bankruptcy. A review of Mr. Faulhaber's check register indicates that the problems suffered by the Faulhabers are created by their attempt to lead a lifestyle far beyond their means. While one can have sympathy for Mrs. Faulhaber's condition and the attendant medical expenses, the record re-

veals that they received a substantial cash payment to defray the medical expenses occasioned by that incident. There is simply no credible evidence to indicate that this incident interrupted a lifestyle where they were meeting their obligations and paying their debts. Their financial problems are of much more recent vintage and are much easier to pinpoint.

Debtors' attorney argued that his clients had no choice except to file a Chapter 7 because they would not have been able to pay enough in monthly payments to have ever confirmed a Chapter 13 plan. The analysis of the budget indicates otherwise. It is true that Debtors have had to surrender their homestead and that has already been foreclosed upon. That fact makes no difference in the analysis of their financial situation. They could not afford the home they were attempting to purchase and whether that is surrendered in the context of an overall plan to pay back their other creditors or not is immaterial. It was an extravagant item they could not afford and they had little or no equity in the home to protect. It is simply not a factor in the analysis of their ability to repay their remaining creditors.

■ The Court finds that the United States Trustee's office has borne its burden to prove that allowing these Debtors to continue in a Chapter 7 proceeding would be a substantial abuse of the bankruptcy system. The creditors should not be forced to bear the burden of the Faulhabers' maintaining a time-share vacation condo, building up a retirement plan and leading a generally extravagant lifestyle. In addition, this Court does not believe that Mr. Faulhaber has been truthful in his claim of $285.00 per month in charitable contributions. There is no credible evidence that Mr. Faulhaber made these contributions prior to his bankruptcy, and the Court does not find his testimony credible concerning present donations.

■ A review of the schedules, particularly the budget, certainly calls into ques-

tion the Debtors' good faith in connection with filing this proceeding. A review of the schedules, which were filed incorrectly, then amended when the U.S. Trustee moved to dismiss the case and then amended again the day before trial, certainly belie any claim that this was a mistaken but good faith effort to seek relief to which the Debtors felt they were entitled. Even the last amendment of their budget on the eve of trial understated the Debtors' income which was easily verifiable by simple reference to his most recent earning statement. Whether Debtors were attempting to protect the expensive home that they ultimately lost, or trying to discharge debts prior to beginning receipt of the substantial annuity to be paid to Mrs. Faulhaber is unclear and is unimportant to the resolution of the issue before the Court. What is clear, is that the Faulhabers have attempted to discharge their debts while maintaining a far more lavish lifestyle than most citizens of our area. It is also clear that they have tried to explain away that lifestyle and seek relief to which they are simply not entitled. That does not constitute the honest but unfortunate debtor entitled to the fresh start referred to by the Supreme Court in *Local Loan Company v. Hunt*, 292 U.S. 234, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). By their actions, the Debtors have shown that they are not entitled to the presumption in their favor provided in 11 U.S.C. § 707(b). The Court cannot find that these Debtors have proceeded in good faith.

■ The United States Trustee has asked this Court to either dismiss the Chapter 7 proceeding for substantial abuse or place some sort of opportunity to convert to Chapter 13 or Chapter 11 alternative in an order of conditional dismissal. The Court does not believe that it is appropriate to enter an order coercing a Debtor to enter into a Chapter 13 proceeding. As this Court reads the Bankruptcy Code, Chapter 13 was intended by Congress to be a voluntary proceeding to encourage Debtors to fulfill their obligations

to their creditors to the extent possible while still granting them debt relief when their financial situation was found to be intolerable. This Court agrees with the holding of *In re McDonald*, 213 B.R. 628 (Bkrtcy.E.D.N.Y.1997) that 11 U.S.C. § 707(b) should not be interpreted so broadly as to authorize bankruptcy courts to use that provision of law to coerce Debtors into a Chapter 13 proceeding. This Court holds that the appropriate remedy is a simple dismissal of the proceeding to allow Debtors to address their financial problems in whatever manner or other forum they may choose.