In re OPPORTUNITIES INDUSTRIALIZATION CENTER OF ATLANTA, INC., Debtor.

OPPORTUNITIES INDUSTRIALIZATION CENTER OF ATLANTA, INC., Plaintiff,

v.

T & B—SCOTTDALE CONTRACTORS, INC., Defendant.

Bankruptcy No. 82–00026A.
Adv. No. 82–1137A.

United States Bankruptcy Court, N.D. Georgia.

Jan. 6, 1983.

Alfred J. Turk, III, Parks, Jackson & Howell, P.C., Atlanta, Ga., for plaintiff.

Robert A. Bartlett, Hicks, Maloof & Campbell, Atlanta, Ga., for defendant.

## ORDER

W. HOMER DRAKE, Bankruptcy Judge.

Opportunities Industrialization Center of Atlanta, Inc. ("OIC") filed its voluntary petition under Chapter 11 of Title 11 of the United States Code on January 4, 1982. On May 6, 1982, OIC filed its Complaint for Avoidance of Lien and on June 7, 1982, T & B—Scottdale Contractors, Inc. ("T & B") filed its answer and counterclaim. On July 9, 1982, OIC filed its reply to T & B's counterclaim. A trial on the plaintiff's Complaint to Avoid Lien was held on July 8, 1982, and was continued and concluded on July 22, 1982. At the conclusion of this trial, this matter was taken under advisement.

On July 22, 1982, OIC filed its Motion for Joinder of Involuntary Plaintiff. This motion was not accompanied by a memorandum of law as required by Local Rule 91.1 of the Northern District of Georgia, as adopted by this Court. Therefore, OIC's Motion for Joinder of Involuntary Plaintiff is dismissed.

OIC's complaint alleges that the lien which T & B has asserted in this case under Ga.Code §§ 67–2001 and 1701(8) and the judgment related to that statutory lien are voidable. OIC bases these contentions on the fact that the judgment lien which was obtained within ninety (90) days of the filing of the debtor's petition is a preferential transfer and that the statutory lien was not properly perfected under Ga.Code § 67–2002(3). T & B's counterclaim seeks to have this Court validate its lien as to the plaintiff's property.

The parties have stipulated that T & B did not file a notice with the Clerk of the Superior Court of Fulton County regarding the filing of Civil Action No. 79–9141 in the State Court of Fulton County and that T & B began work on the subject property on March 13, 1979. See August 18, 1982 Stipulation. There is no question of fact concerning T & B's attempt to "make good" or perfect its lien as contemplated by Ga.Code § 67–2002. Therefore, the only questions which this Court will address are the legal questions associated with the attempt to perfect T & B's lien, and the question of whether the October 5, 1981 judgment obtained by T & B against OIC and recorded on October 25, 1981, constitutes a preferential transfer within the ambit of 11 U.S.C. § 547.

## STATUTORY LIEN

Ga.Code § 67–2002 provides in relevant part that:

"To make good the liens specified in § 67–2001, they must be created and declared in accordance with the following provisions . . .

(3) the commencement of an action for the recovery of the amount of his claim within 12 months from the time the same shall become due. In addition, at the time of filing such action, the party claiming the lien shall file a notice with the clerk of the superior court of the county wherein the subject lien was filed. . . . The notice shall identify the court wherein the action is brought . . . . The clerk of the superior court shall enter on the subject lien so referred to the book and page on which the notice is recorded and shall index such notice in the name of the then purported owner as shown by the caption contained in such notice. . . . Failure to bring action and to file the notice described in this paragraph within the time required shall extinguish the subject claim of lien and render the same unenforceable.

In the event any contractor or a subcontractor procuring materials, architect

services, . . . shall abscond or die or remove from the state within 12 months from the date such services, . . . or material are furnished him, so that personal jurisdiction cannot be obtained on said contractor . . . or if, after the filing of suit, no final judgment can be obtained against him for the value of such material, . . . the person or persons so furnishing material, services, labor and supplies shall be relieved of the necessity of filing suit or obtaining judgment against such contractor or subcontractor as a prerequisite to enforcing a lien against the property and proved by said contractor or subcontractor and may, subject to the provision of § 67–2001, enforce said lien directly against the property so improved, in an action against the owner thereof, if filed within 12 months from the time the same shall be come due, with the judgment rendered in any such proceeding to be limited to a judgment in rem against the property improved and to impose no personal liability upon the owner of said property."

The Georgia courts have held that the above language sets forth time limitations for the commencement of actions against *contractors* and does not limit actions against the *owner of real estate* except in those instances in which an action cannot be brought or concluded against a contractor or subcontractor. *Adair Mortgage Company v. Allied Concrete Enterprises, Inc.*, 144 Ga.App. 354, 241 S.E.2d 267 (1977); affirmed 241 Ga. 121, 243 S.E.2d 888 (1978); *Hancor, Inc. v. Fleming Farms, Inc.*, 155 Ga.App. 579, 271 S.E.2d 712 (1980).

The purpose of Ga.Code § 67–2002(3) is to provide notice that a statutory lien has been perfected by the filing of a suit. When there is no intermediate party, and the lien is asserted directly against the owner of property for failure to pay a contractor, as in the instant case, the law contemplates a suit directly against the property owner to enforce said lien. Ga.Code § 67–2002(3). This suit must be filed within twelve months from the time that materials or services were last provided to the property, and any judgment is limited to a judgment in rem against the property. The question before the Court is whether the filing of a suit by a contractor against the owner of property also requires the filing of a notice of this suit in the Superior Court where the property is located. The parties have not directed the Court's attention to any cases which specifically address this point, and the Court has been unable to discover any such cases.

Ga.Code § 67–2001, which creates a special lien, is a "creature of statute, and as such is in derogation of the common law." *Shirah Contracting Company, Inc. v. Waite, et al.*, 143 Ga.App. 355, 238 S.E.2d 728 (1977). Furthermore, these statutes are to be strictly construed and "one who claims such a lien must bring himself clearly within the law." *Bowen, et al. v. Collins*, 135 Ga.App. 221, 217 S.E.2d 193 (1975); see also *White v. Aiken*, 197 Ga. 29, 33, 28 S.E.2d 263 (1943); *Hawkins v. Chambliss*, 116 Ga. 813, 814, 43 S.E. 55 (1902); *Haralson v. Speer*, 1 Ga.App. 573, 575, 58 S.E. 142 (1907). Applying this standard of statutory interpretation to the question in the instant case, the Court finds that Georgia law requires that a contractor suing an owner directly file a notice of the suit brought against the owner with the Clerk of the Superior Court in which the subject property is located. Where this is not done, the requirements of Ga.Code § 67–2002 have not been met; the lien has not been "made good"; and there can be no "relation back" concerning either the lien or any judgment arising out of said lien. See *Oglethorpe Savings & Trust Company v. Morgan*, 149 Ga. 787, 102 S.E. 528 (1919). Therefore, the statutory lien in the case *sub judice* has not been perfected.

## JUDGMENT LIEN

The judgment obtained by T & B in the instant case exists in its own right, and its validity is not based on any relationship to T & B's attempt to perfect the statutory lien discussed above, except to the extent that the initiation of the suit which led to the judgment is a prerequisite to the per-

fection of a statutory lien under § 67–2002. T & B recorded its judgment on the General Execution Docket of Fulton County on October 21, 1981, which was within ninety (90) days of the filing of the above-styled Chapter 11 proceeding. Therefore, the question before the Court becomes whether the filing by T & B of its judgment against OIC, which perfected T & B's lien against OIC's property, is a preferential transfer within the ambit of 11 U.S.C. § 547.

Section 547(b) of the Bankruptcy Code sets forth five requirements that must be met for a transfer to be a preferential transfer. 4 *Collier on Bankruptcy* ¶ 547.01 p. 547–11 (15th ed.). Section 547(b)(3) requires that the transfer be made while the debtor was insolvent. Section 547(f) of the Bankruptcy Code establishes a presumption that the debtor has been insolvent on and during the ninety (90) days immediately preceding the filing of its petition.

The debtor's schedules reflect total liabilities of $660,987.04 and total assets of $5,236,825.00. The bulk of this asset total is composed of real property, which was valued in the debtor's schedules at $4,671,000.00. The evidence presented at the July 8, 1982 hearing indicated that the value of OIC's property is approximately $4,974,000.00 which figure includes the property and improvements, less accrued depreciation. The replacement cost of the building was shown to be approximately $4,945,000.00. The value of the property due to certain use restrictions and related covenants contained in a warranty deed between the Atlanta Housing Authority and OIC was shown to be between $2,300,000.00 and $2,700,000.00. (See Transcript at pp. 58–61.)

OIC has argued that the Department of Commerce Economic Development Administration ("EDA") Property Management Agreement (defendant's Exhibit 8) and related Commerce Department regulations, as well as the federal grant which provided 80% of the construction and equipment costs of the subject building, give the EDA an ownership interest in the property, thus reducing the value of the property to OIC to the extent that OIC was insolvent at the time T & B recorded its judgment. The warranty deed transferring the subject property from the Housing Authority of the City of Atlanta, Georgia, to OIC (defendant's Exhibit 5) transferred the subject property to OIC in fee simple without any reservation of title in the grantor and containing only certain "controls" which were to expire on November 30, 1988, and covenants. Based upon the evidence presented at the trial in this case, the Court rejects OIC's argument that the EDA has an 80% ownership interest in the property and finds that OIC was not insolvent on the date that T & B recorded its judgment. Therefore, T & B's judgment and related lien did not constitute a preferential transfer, and accordingly the Court validates T & B's lien against the property.

Therefore, for the above-stated reasons, the relief which OIC seeks in its complaint to avoid lien is denied and the relief which T & B seeks in its counterclaim is granted to the extent that its lien is validated, with no costs or attorneys' fees being assessed against OIC.

IT IS SO ORDERED.