335 B.R. 351 (2004)
In re Carlos Vicente CORTEZ and Suzanne Hallman Cortez, Debtors.
No. 04-43750 DML 7.
United States Bankruptcy Court, N.D. Texas, Fort Worth Division.
November 5, 2004.
*352 Peter Michael Reed, McCreary, Veselka, Bragg & Allen, PC, Austin, TX, for Denton County, Creditor.
Erin Marie Schmidt, United States Trustee, Dallas, TX, U.S. Trustee.
Behrooz P. Vida, Venable & Vida, LLP, Bedford, TX, Carla Reed Vida, Venable & Vida, LLP, Bedford, TX, for Debtors.

MEMORANDUM OPINION AND ORDER
DENNIS MICHAEL LYNN, Bankruptcy Judge.
Before the court is the First Amended United States Trustee's Motion to Dismiss Under 11 U.S.C. § 707(b) (the "Motion") filed on August 9, 2004.[1] Carlos Vicente Cortez and Suzanne Hallman Cortez ("Mr. Cortez" and "Mrs. Cortez" individually, and collectively "Debtors") filed their Response to Motion to Dismiss Under 11 U.S.C. § 707(b) opposing dismissal of their bankruptcy case on July 28, 2004. The court held a hearing on the Motion on October 7, 2004. At the conclusion of the October 7, 2004 hearing, the court took this matter under advisement and instructed the parties to submit letter briefs to the court. Both parties submitted letter briefs and the court has reviewed the same.
This matter is subject to the court's core jurisdiction. 28 U.S.C. §§ 1334(a) and 157(b)(2)(A) and (O). This memorandum opinion and order comprises the court's findings of fact and conclusions of law. FED. R. Bankr. P. 7052 and 9014.

I. Background
The relevant facts in this case are not in dispute. Debtors filed for relief under chapter 7 of the United States Bankruptcy Code[2] (the "Code") on April 8, 2004 (the "Petition Date"). As of the Petition Date, Mr. Cortez was unemployed and Mrs. Cortez was employed as a registered nurse. Debtors' Schedule I stated that Debtors' gross monthly income is $5,155.04 and that their net monthly income is $4,147.00, all of which was attributable to the earnings of Mrs. Cortez. Debtors' Schedule J reflected monthly expenses totaling $5,320.91. Debtors scheduled one secured claim in the amount of $176,000.00 on account of their homestead and $85,719.39 in unsecured debt, the majority of which consists of credit card debt.
*353 Debtors' Schedule I also contained a statement that Mr. Cortez believed he would become employed during the month of the bankruptcy filing. Mr. Cortez's prediction proved accurate, and he began employment as the Human Resource Director for Aramark Healthcare Management Services on April 26, 2004 and has continued in that position since. Mr. Cortez receives a salary of $95,000.00 per year and his net monthly income is now $5,896.00. Mr. Cortez also received a $5,000.00 bonus upon completion of the first 60 days of employment at his current position.
Subsequent to Mr. Cortez beginning his current job, Mrs. Cortez reduced the number of hours she works per week. Her current net monthly income is, at a minimum, $750.00, which brings Debtors' current, combined net monthly income to a minimum of $6,646.00. Debtors' net monthly income now exceeds their monthly expenses as reflected in their schedules by $1,325.00.

II. Discussion
The issue before the court is whether the court may consider post-petition events when deciding whether to dismiss a case under section 707(b),[3] or whether the court may only consider a debtor's circumstances as they existed on the petition date.
Code section 707(b) provides in relevant part:
After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.
11 U.S.C. § 707(b). Debtors are individuals, and it is undisputed that Debtors' debts are primarily consumer debts. The court must therefore determine whether granting relief to Debtors would constitute a substantial abuse of the Code.
The Code itself provides no guidance as to what qualifies as substantial abuse. In addressing the issue of what constitutes substantial abuse, courts in the Northern District of Texas have generally utilized a "totality of the circumstances" approach under which the court considers a number of factors.[4]In re Rubio, 249 B.R. 689, 695 (Bankr.N.D.Tex.2000). If consideration of the various factors leads to a conclusion that the debtor (1) is able to pay a significant amount to creditors out of the debtor's future income, or (2) has failed to act honestly and in good faith in the debtor's dealings with creditors, the presumption[5] in favor of granting the relief *354 requested by a debtor is overcome and dismissal of the case under section 707(b) is proper. Id. at 696; See also In re Laman, 221 B.R. 379, 381 (Bankr.N.D.Tex.1998) ("The Court will examine the ability to repay creditors as the primary factor for dismissing a case [under section 707(b)]."). Because the United States Trustee (the "Trustee") does not contend that Debtors have in any way acted in bad faith, the court need only determine whether Debtors meet the test of being capable of making substantial payments to creditors from their future income.
At present, Debtors' net monthly income exceeds their expenses by $1,325.00 and Debtors could make meaningful payments to creditors through a plan of reorganization in a chapter 13 bankruptcy. As of the Petition Date, however, Debtors lacked the ability to repay creditors because their expenses exceeded their net monthly income. The Trustee argues that, in the section 707(b) analysis, the court may consider post-petition events occurring up to the deadline by which the Trustee must bring a motion to dismiss under section 707(b).[6] The Trustee urges the court to consider Mr. Cortez's current income in deciding whether Debtors have the ability to pay creditors, despite the fact that such income did not exist as of the Petition date. Debtors argue that the court must look only to the circumstances of the case as they existed at the Petition Date and determine whether Debtors had the ability to repay creditors at that moment in time. Debtors' position is supported in caselaw and, for the reasons discussed below, the court finds that post-petition events should not be considered in deciding whether to dismiss a case under section 707(b) unless the events were clearly in prospect at the time of filing for bankruptcy.
Code section 301 provides that "the commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter." 11 U.S.C. § 301. Thus, the court's analysis must focus on whether the order for relief granted on the Petition Date by operation of section 301 was proper, not whether substantial abuse would occur if the court were to grant that same relief for the first time today. In determining the propriety of granting relief, the court concludes that it would be inappropriate to consider post-petition events that were not known or certain to occur as of the Petition Date. See In re Pier, 310 B.R. 347, 355 (Bankr.N.D.Ohio 2004) ("[B]y referring to the order for relief, which under § 301 is automatically entered at the time a petition is filed, § 707(b)'s concern must be focused on the circumstances as they existed at the time a debtor's case is commenced."). If the court were deciding, on the Petition Date, whether granting the relief requested by Debtors would constitute a substantial abuse, the court would of course look to the circumstances as they existed at that moment in time. Circumstances changed subsequent to the order for relief should, as a general rule, make no difference *355 simply because the court has the benefit of hindsight.
Limiting the court's consideration to only those circumstances existing on the Petition Date including anticipating post-petition events known to be in prospect at the time of filing is not only consistent with the language and effect of sections 301 and 707(b), but is also consistent with the general bankruptcy policy of using the date of filing as a line in the sand to determine a party's rights in the case. See Leppaluto v. Combs (In re Combs), 101 B.R. 609, 614-15 (9th Cir. BAP 1989); In re Pier, 310 B.R. at 354. Other Code provisions also require that only those circumstances existing at the petition date will control various determinations made by the court. For example, the automatic stay under section 362 arises on the petition date, a debtor's entitlement to exemptions under section 522 is determined as of the petition date, secured claims are determined as of the petition date pursuant to section 506, the avoidability of certain transfers under sections 547 and 548 is dependant on the timing of the transfers in relation to the petition date and a creditor's security interest may be avoided under section 544 if the security interest is not perfected as of the petition date. See In re Pier, 310 B.R. at 354.
The court's holding in this matter is also consistent with its decision in In re Hatzenbuehler, 282 B.R. 828 (Bankr.N.D.Tex.2002). In Hatzenbuehler, this court addressed the issue of whether post-petition events should be considered in determining eligibility of an individual as a chapter 13 debtor under section 109(e).[7] While section 109 is the primary provision addressing eligibility for relief under various chapters of the Code, questions of eligibility do not arise exclusively in the context of section 109. See, e.g., Code sections 101(19) (defining family farmer eligible for chapter 12); 101(51C) (defining small business eligible for special chapter 11 procedures); 303(a) and (k) (regarding eligibility for involuntary relief). And, while section 707(b) is not couched in terms of eligibility, the court views the heart of the issue in this case as a question of eligibility. The sole basis for dismissal argued by the Trustee  that Debtors are currently capable of repaying creditors from their future income through a chapter 13 plan  focuses on Debtors' present eligibility to be debtors in chapter 13. The court, on the other hand, believes the ultimate question posed is the availability of  Debtors' eligibility for  chapter 7 relief at the Petition Date. Thus, Hatzenbuehler is both relevant and instructive.
In Hatzenbuehler, this court stated:
Recognizing that a debtor's schedules are a potentially imperfect measure of the debtor's debts, the Court concludes a more appropriate approach is to use the debtor's schedules as a starting point in the section 109(e) inquiry, but also to consider postpetition events and *356 developments to the extent (and only to the extent) they shed light on the amount of secured and unsecured debt actually owed by the debtor at the time of the filing of the petition.

Id. at 833 (emphasis in original). Thus, this court found that post-petition events should be considered only to the extent that they are the necessary consequences of the circumstances existing at the petition date. The same effect is achieved in this matter because the court holds that post-petition events may only be considered in a section 707(b) analysis to the extent such events were clearly in prospect at the petition date since even upon entry of the order for relief the court could take account of such an expected change in a debtor's status.
The court's conclusion is also reinforced by Congress's very specific instructions when post-petition events are to be considered. Section 541(a)(5) is quite clear as to which after-acquired property comes into an estate. Sections 1207 and 1306 provide for inclusion of post-petition income in the estate. Section 503 provides for allowance of certain claims with administrative expense priority based on post-petition occurrences. Congress could have crafted section 707(b) similarly had it wished the court to consider (other than under section 541(a)(5)) a debtor's post-order-for-relief good fortune. Indeed, unlike section 707(b), section 707(a) specifically requires that the court look at post-petition conduct rather than prepetition circumstances in determining whether to dismiss a case.[8]See also, e.g. section 1104(a)(1) (specifying cause occurring "either before or after commencement of the case").
The Trustee argues that limiting the court's consideration to circumstances existing at the petition date will foster future abuse by unemployed debtors who, anticipating that they will secure permanent employment, will forego seeking or accepting employment until after filing for bankruptcy. The Trustee's concern is reasonable, but the court's decision in this case provides protection against the potential for such abuse in the future. First, the general rule requires that the court look only to the circumstances actually in existence at the petition date. The court may, however, consider post-petition events to the extent they were clearly in prospect at the petition date. For example, if the evidence in the case at bar had established that Mr. Cortez reached an oral agreement to begin employment at his current position prior to the Petition Date, or received a formal letter offering the position prior to the Petition Date, it would be proper to consider his current employment in deciding whether Debtors possess the ability to repay creditors. Factoring Mr. Cortez's employment into the court's decision in such a scenario would be appropriate because the prospective employment would have been a fact as of the Petition Date.
The court's ruling also does not limit the Trustee's ability to seek dismissal of a case under section 707(b) (or section 707(a)) on the basis of a debtor's bad faith. A showing that a debtor has failed to act honestly and in good faith in dealing with creditors is an alternative basis to a debtor's ability to repay creditors which justifies *357 dismissal under section 707(b). In re Rubio, 249 B.R. at 696. For example, returning to the previous hypothetical, if Mr. Cortez was assured employment at his current position prior to the Petition Date, but at a salary significantly less than $95,000.00 per year, the court's consideration of his post-petition employment may not lead to a conclusion that Debtors have the ability to "pay a significant amount" to creditors out of their future income. Id. However, if the salary was such that Debtors knew funds would be available to pay some amount, albeit small rather than significant, the court's consideration of that which was clearly in prospect at the Petition Date might justify a conclusion that Debtors exhibited a lack of good faith and honesty in filing the case.[9]
Not only does the court's approach not hinder the Trustee from pursuing dismissal of cases filed in bad faith, it carries the benefit of providing certainty to debtors and creditors and will allow attorneys to give clients accurate advice regarding the applicability of section 707(b) to a case. Were the court to hold that any post-petition change in circumstances could be considered in deciding whether dismissal is appropriate under section 707(b), a debtor's eligibility for relief would remain in question until the deadline for filing a motion to dismiss under 707(b) passes. Adoption of the Trustee's position would discourage a debtor unemployed at the petition date from seeking employment because success in that endeavor could jeopardize the bankruptcy case.[10]
Applying the facts of the case at bar to the legal test adopted by the court, the Trustee's motion must be denied.[11] While Debtors' Schedule I stated Mr. Cortez's belief that he would become employed during the month of the filing of Debtors' case, that statement-alone does not transform an honest belief into an occurrence which was clearly in prospect at the Petition Date. Rather, the evidence shows Mr. Cortez's new job was not clearly in prospect. Mr. Cortez did not receive the offer for his current position until after the Petition Date, and the Trustee's letter brief states that Debtors have not acted in bad faith. And although Mr. Cortez received the offer mere days after the Petition Date, the evidence before the court suggests this is no more than fortuitous timing. *358 Therefore, Mr. Cortez's post-petition employment is not an event that was clearly in prospect at the Petition Date and cannot be considered by the court in ruling on the Trustee's Motion. The court may look only to those circumstances actually existing at the Petition Date and Debtors' schedules reflect that Debtors' monthly expenses then exceeded their net monthly income. Debtors did not have the ability to make significant payments to creditors and the granting of the relief requested by Debtors is not a substantial abuse of the Code.

III. Conclusion
For the foregoing reasons, the Motion must be, and is, DENIED. Each party shall bear its own costs.
It is so ORDERED.
NOTES
[1] The first date set for the § 341 creditors meeting in this case was May 10, 2004 and the United States Trustee timely filed his original Motion to Dismiss Under 11 U.S.C. § 707(b) on July 9, 2004 in accordance with Federal Rule of Bankruptcy Procedure 1017(e)(1).
[2] 11 U.S.C. §§ 101-1330.
[3] The effect of granting the Motion would be to offer Debtors the choice of converting to chapter 13 and committing 36 months of disposable income to payments to the chapter 13 standing trustee. The court is not called upon to judge whether Debtors should proceed under chapter 13 as opposed to whether they must elect that chapter or be denied bankruptcy relief.
[4] Such factors may include, but are not limited to, whether the debtor has a source of stable, future income, whether the debtor's budget is excessive, whether the debtor is eligible for chapter 13 bankruptcy, whether the debtor made numerous purchases immediately prior to filing bankruptcy and whether the debtor has a history of living beyond his or her means.
[5] Given the presumption created by section 707(b), this court must favor granting the relief requested by Debtors. Regarding the presumption, a leading treatise states:

[T]he statutory presumption is obviously meant to be something more than simply a rule about the burden of proof, since that burden would already have been on the party seeking to dismiss the case. . . . Therefore, it appears that the presumption is an indication that in deciding the issue, the court should give the benefit of any doubt to the debtor and dismiss a case only when a substantial abuse is clearly present.
6 COLLIER ON BANKRUPTCY ¶ 707.04[5][a] (15th ed. rev.2003).
[6] Federal Rule of Bankruptcy Procedure 1017(e)(1) requires the Trustee to file a motion to dismiss under section 707(b) within 60 days of the first date set for a debtor's section 341 creditors meeting unless, prior to expiration of that period, the Trustee requests and the court finds cause for extension of the deadline.
[7] Code section 109(e) provides that:

Only an individual with regular income that owes, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts of less than $307,675 and noncontingent, liquidated, secured debts of less than $922,975, or an individual with regular income and such individual's spouse . . . that owe, on the date of the filing of the petition, noncontingent, liquidated, unsecured debts that aggregate less than $307,675 and noncontingent, liquidated, secured debts of less than $922,975 may be a debtor under chapter 13 of this title.
11 U.S.C. § 109(e). In Hatzenbuehler, the debtors' scheduled unsecured debt was under the then applicable 109(e) cap at the time of filing their bankruptcy. The debtors subsequently settled a disputed claim with one of their creditors which resulted in amendment of their schedules to reflect unsecured debt exceeding the 109(e) limit.
[8] The 1998 addition to section 707(b) regarding charitable contributions could be read to indicate consideration of post as well as pre-order-for-relief events. The addition creates a narrow set of circumstances the court cannot consider in the section 707(b) analysis. The court reads the addition as an instruction not to consider a particular category of expenses which may appear on a debtor's schedules, not as evidence that Congress intended the court to generally consider post-petition events in the section 707(b) analysis.
[9] The court notes that an unemployed debtor's future employment which is clearly in prospect at the petition date would not, by its mere existence, constitute evidence of bad faith in every case. For example, a debtor might be certain of beginning employment immediately following the petition date in a position where compensation is tied to achievement of certain performance milestones. In such a case it might be impossible for a debtor, though certain of the future employment, to know with any certainty whether the future income would be sufficient to make significant payments to creditors in a chapter 13 case.
[10] The first date for a debtor's section 341 creditors meeting may not be set for over one month after the petition date, and Federal Rule of Bankruptcy Procedure 1017(e)(1) allows the Trustee 60 days from such date, in which to file a motion to dismiss under section 707(b). If any post-petition events leading up to the Rule 1017(e)(1) deadline could be considered in the section 707(b) analysis, a debtor may be reluctant to seek employment for over three months after the petition date. The court cannot conclude that a ruling which might persuade a debtor to remain unemployed for such a length of time would further any purpose of section 707(b) or any general Code policy.
[11] The court notes that it is unnecessary in this case to evaluate the various, discrete factors identified in caselaw associated with the "totality of the circumstances" approach because the parties agree that resolution of this matter turns on whether the court may consider the sole fact of Mr. Cortez's post-petition employment.