**In re Kelly Lynn FERGASON and Shannon Adams Fergason.**

No. 02–43403–H2–7.

United States Bankruptcy Court, S.D. Texas, Houston Division.

June 2, 2003.

any such motion would presumably be the same.

Andrew George Shebay, III, Attorney at Law, Houston, TX, for Debtors.

W. Steve Smith, Houston, TX, trustee.

Ellen Maresh Hickman, Houston, TX, U.S. Trustee.

### MEMORANDUM OPINION FINDINGS AND CONCLUSIONS IN SUPPORT OF ORDER GRANTING UNITED STATES TRUSTEE'S MOTION TO DISMISS UNDER § 707(b)

WESLEY W. STEEN, Bankruptcy Judge.

Kelly L. Fergason and Shannon A. Fergason (the "Debtors") filed this case under chapter 7 of the Bankruptcy Code on November 14, 2002. The United States Trustee has filed a motion to dismiss under 11 U.S.C. § 707(b) alleging that allowing the Debtors to obtain a chapter 7 discharge would be an abuse of the Bankruptcy Code within the meaning of § 707(b). For reasons set forth below, the Court agrees with the United States Trustee and dismisses this case by separate order issued this date.

### FACTS

Mr. Fergason has been employed as an analyst at Shell Trading for about three years. Mrs. Fergason has been employed as a director at Page Parkes Center of Modeling and Acting for about 19 years. The Fergason's combined monthly income is $7,673.00 (Schedule I, as amended), and the Fergason's allege that their living ex-

penses amount to $7,673.00 per month (Schedule J, as amended)[1]. On their bankruptcy Schedules D, E, and F, the Debtors list $158, 853.70 in secured debt, $69,156.17 as unsecured priority debt, and $49,656.87 in unsecured non-priority debt.

### ANALYSIS OF THE LAW AND JURISPRUDENCE

Section 707(b) provides:

After notice and a hearing, the court, on its own motion or on a motion by the United States Trustee, but not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the relief requested by the debtor.

The rationale for § 707(b) is explained in the Senate report accompanying § 445, Omnibus Bankruptcy Improvements Act of 1983, which was a forerunner to the Bankruptcy Amendments and Federal Judgeship Act of 1984. *See In re Heasley,* 217 B.R. 82 (Bankr.N.D.Tex.1998). The Senate report states:

This provision represents a balancing of two interests. It preserves the fundamental concept embodied in our bankruptcy laws that debtors who cannot meet debts as they come due should be able to relinquish non-exempt property in exchange for a fresh start. At the same time, however, it upholds creditors' interests in obtaining repayment where such repayment would not be a burden. Crushing debt burdens and severe financial problems place enormous

1. As explained below, the Debtor's original schedules showed substantial disposable income. These amended schedules, which re-

port no disposable income, were filed on the eve of trial after the United States Trustee's motion to dismiss.

strains on borrowers and their families. Family life, personal emotional health, or work productivity often suffers. By enabling individuals who cannot meet their debts to start a new life, unburdened with debts they cannot pay, the bankruptcy laws allow troubled borrowers to become productive members of their communities. Nothing in this bill denies such borrowers with unaffordable debt burdens bankruptcy relief under chapter 7. However, if a debtor can meet his debts without difficulty as they come due, use of chapter 7 would represent a substantial abuse.

*See id., citing* S.Rep. No. 98–65, at 53–4 (1983).

The Bankruptcy Code does not define "substantial abuse" and the Fifth Circuit has not yet provided a definition. Two lines of jurisprudence have developed:

Some courts conclude that the Court should consider the fundamental principle of a chapter 7 fresh start in the context of the totality of the circumstances. *Id. See also, In re Green,* 934 F.2d 568 (4th Cir. 1991); *In re Stewart,* 175 F.3d 796 (10th Cir.1999); *In re Heasley,* 217 B.R. at 87; *In re Rubio,* 249 B.R. 689 (Bankr.N.D.Tex. 2000); *In re Watkins,* 216 B.R. 394 (Bankr.W.D.Tex.1997). These courts have discussed the following criteria:

1. Whether the debtor has a likelihood of sufficient future income to fund a chapter 11, 12, or 13 plan which would pay a substantial portion of the unsecured claims;

2. Whether the debtor's petition was filed as a consequence of illness, disability, unemployment or some other calamity;

3. Whether the schedules suggest the debtor obtained cash advancements and consumer goods on credit exceeding his/her ability to repay them;

4. Whether the debtor's proposed family budget is excessive or extravagant;

5. Whether the debtor's statement of income and expenses is misrepresentative of the debtor's financial condition; and

6. Whether the debtor has engaged in eve-of-bankruptcy purchases.

*Norton Bankr.Law & Practice 2d.,* § 67:5, at 67–10 (1997).

While all six factors are considered, the primary focus is the debtor's ability to pay debts out of his or her future income. *Id.*

"The second line of cases holds that substantial abuse may exist wherever the debtor has the ability to pay a significant portion of his or her debts without undue hardship." *Id.* at 67–10, 67–11. *See, In re Kelly,* 841 F.2d 908 (9th Cir.1988); *U.S. Trustee v. Harris,* 960 F.2d 74 (8th Cir. 1992) (finding the ability to fund a chapter 13 plan can be sufficient reason to dismiss a chapter 7 petition under § 707(b)). As explained in *In re Kelly:*

> [T]he debtor's ability to pay his debts when due as determined by his ability to fund a chapter 13 plan is the primary factor to be considered in determining whether granting relief would be substantial abuse.... We find this approach fully in keeping with Congress's intent in enacting section § 707(b).... This is not to say that inability to pay will shield a debtor from § 707(b) dismissal where bad faith is otherwise shown. But a finding that a debtor is able to pay his debts, standing alone, supports a conclusion of substantial abuse.

*See In re Harris,* 960 F.2d at 76.

In application, the two lines of authority are not substantially different. *In re Fitzgerald,* 155 B.R. 711 (Bankr.W.D.Tex.

1993). Generally, courts have held that a totality of the circumstances analysis should be used and that, while the ability of a debtor to pay his or her debts is not substantial abuse *per se,* it can be regarded as the most important consideration in the analysis. *See* 6 *Collier on Bankruptcy* ¶ 707.04[4], at 707–23 (15th ed. rev.2001).

## APPLICATION OF THE LAW TO THESE FACTS

1. The Fergason's proposed family budget is excessive.

Schedules I (income) and J (expenses), as amended, do not show any excess income to fund a Chapter 13 plan. The court, however, is not bound by the debtor's statement of income and expenditures. 6 *Collier* ¶ 707.04[2], at 707–19. The court may review the debtor's projected expenses and reject or reduce those that it finds clearly excessive or unrealistic. *Id.* Moreover, "padding" expenses may support a finding of substantial abuse. *Id.*

In this case, the Debtor's projected expenses, at a minimum, provide a very comfortable lifestyle. The Debtor's schedules show $502.00 per month for transportation. Upon questioning, the Debtor's were unable to account for $300.00 of the amount. Further, the Debtor's included a $306.00 monthly charge for telephone service. These charges included home telephone, mobile phones for both Debtors, and a mobile phone for the Debtors' 14 year-old child. Under the Utilities section of Schedule J, the Debtor's include a $143.00 monthly charge for television cable service, trash disposal service, TIVO digital televi-

sion recording, and internet service. Also, the Debtor's include $400.00 per month for recreation, clubs and entertainment, newspapers, magazines, etc, and $175.00 per month for fingernail and hair care.

Considering only the $400.00 per month proposed for recreation and entertainment, the Debtor's have the ability to contribute over $14,000.00 in 36 months (over which a chapter 13 plan might be proposed).

The Court concludes that the Fergason's expenses are excessive, that it allows them to sustain a luxury lifestyle not enjoyed by most families, and that this factor, considered as part of the totality of circumstances, supports a finding of abuse.

2. The Fergason's have sufficient future income to fund a chapter 13 plan which would pay a substantial portion of the unsecured claims.

Although the Court does not adopt the United States Trustee's analysis precisely, the Court finds that the United States Trustee's analysis in Exhibit 9 is persuasive. That analysis purports to estimate the Debtor's ability to fund a chapter 13 plan. Under this analysis, adjustments were made to Schedules I and J (as amended) to account for: double deduction of child support, 401(k) contributions [2] and the associated tax effect, employee stock purchase plan, pregnancy sinking fund, personal unscheduled loan, and IRS installment plan. This analysis supports a conclusion that the Debtor's have disposable income of more than $1,300.00 per month [3]. Accordingly, the Debtor's would

---

**2.** There is an overwhelming consensus among bankruptcy courts that debtor's voluntary payment into a pension, savings, retirement or investment type plan, such as a 401(k) plan, is not an expenditure reasonably necessary for debtor's maintenance and support during the pendency of a Chapter 13 plan. *In*

*re Johnson,* 241 B.R. 394 (Bankr.E.D.Tex. 1999). *See also, In re Nation,* 236 B.R. 150 (Bankr.S.D.N.Y.1999); *In re May,* 261 B.R. 770 (Bankr.M.D.Fla.2001).

**3.** Evaluation of "reasonable" and "necessary" living expenses is an imprecise and tricky exercise, at best. The United States Trustee

have $45,125.51 [4] available to fund a chapter 13 plan. This represents a 40.07% payout in a 36 month plan [5].

The Court finds that the ability to fund a substantial chapter 13 plan supports a conclusion of substantial abuse.

3. Misrepresentation of the Debtor's financial condition.

The Debtor's statement of income and expenses are misleading at best. The original schedules showed substantial disposable income and even purported to provide for repayment of credit card debt which the Debtors do not intend to repay. After the United States Trustee's motion to dismiss, and only one day before the hearing, the schedules were amended, but are still "padded" and misleading.

The Court finds that these conclusions of "padded" and misleading bankruptcy schedules supports a finding of substantial abuse.

4. The Debtor's petition was not filed as a consequence of illness, disability, unemployment or some other calamity.

The Debtors are expecting their fourth child; however, Mrs. Fergason testified she returned to her place of employment after the birth of their other children. Her testimony about her current intentions was vague and evasive. The petition for bankruptcy is not a result of the pregnancy or illness. The petition for bankruptcy is not a result of unemployment.

Testimony indicated that this bankruptcy filing was prompted by collection activities of the Internal Revenue Service. As indicated on Government Exhibit 6 (and not contradicted by the Debtors), the Debtors owe taxes from years as distant as 1989, assessed as many as 10 years ago. It appears that the Debtors overextended themselves for a wedding, and kept up with credit card payments by not paying federal taxes. When the IRS began serious collection efforts, the Debtors filed the bankruptcy case.

After consideration of these facts, the Court finds that these causation factors support a conclusion that the Debtors' availing themselves of the Bankruptcy Code for these purposes constitutes a substantial abuse.

5. The schedules suggest the Debtors obtained consumer goods on credit exceeding their ability to repay the debt.

Schedule F lists 21 separate creditors holding unsecured, non-priority claims totaling $49,656.87. Schedule I (as amended) lists a combined monthly income of $7,673.00 per month or $92,076.00 annually. This represents an unsecured debt-to-income ratio of 54% [6]. This suggests the

---

made adjustments for apparent errors as indicated in the text above. The Court might have made other adjustments, such as reduction of cable television, TIVO, and internet expenses and reduction of entertainment expenses (a highly suspect budget item, because it included several hundred dollars per month for parties and entertainment for the Debtor's children). On the other hand, the Court might have allowed part of the $500.00 per month "pregnancy reserve", which testimony indicated was used as a slush fund for expenditures not otherwise budgeted. All in all, the

Court finds that the United States Trustee's analysis approximately correct.

**4.** ($1,371.67 * 36 months)—$4,245.61 secured debt to IRS.

**5.** $45,125.51 / $112,622.92 (where the denominator is $49,656.87 in unsecured debt + $62,966.05 in unsecured IRS debt per proof of claim).

**6.** $49,656.87.00 / $92,076.00

Debtors obtained consumer goods on credit exceeding their ability to repay the debt.

Although there is no indication that these consumer purchases were made on the eve of bankruptcy, Mr. Ferguson testified that the Debtors' financial difficulties began when he overextended his unsecured credit card debt, about three years ago, for the purpose of providing his new wife with her "dream wedding." In addition, there was testimony about purchases of luxury items such as an expensive digital camera.

After consideration of these facts, the Court concludes that the types of purchases that gave rise to the debt proposed to be discharged support a conclusion that the Debtors' availing themselves of the Bankruptcy Code for these purposes constitutes a substantial abuse.

6. The Fergason's did not appear to engage in eve-of-bankruptcy purchases.

The sixth factor frequently discussed by the courts is whether there was a pre-bankruptcy buying binge. There is no indication of that conduct in this case. Therefore, with respect to this factor the Court concluded that it would not support a conclusion of substantial abuse.

## CONCLUSION

Five of the six factors frequently discussed in the jurisprudence suggest that allowing the Debtors to proceed with this case would be a substantial abuse of the Bankruptcy Code. The most important factors weigh heavily for such a determination. Therefore, after consideration of all the facts and circumstances, the Court concludes that granting relief in this case would be a substantial abuse of the Bankruptcy Code and the motion of the United States Trustee to dismiss under § 707 is granted by separate order issued this date.