**In re David Arnold RATHBUN and Joni Lynn Rathbun, Debtors.**

**No. 03–39789 HDH–7.**

United States Bankruptcy Court, N.D. Texas, Dallas Division.

April 20, 2004.

Robert M. Nicoud, Jr., Olson Nicoud & Gueck, LLP, Dallas, TX, for Debtor.

Victoria B. Tutterrow, Office of the U.S. Trustee, Dallas, TX, for Movant U.S. Trustee.

### MEMORANDUM OPINION ON SECTION 707(b) MOTION OF UNITED STATES TRUSTEE

HARLIN D. HALE, Bankruptcy Judge.

David Arnold Rathbun and Joni Lynn Rathbun ("Debtors") have an annual combined income of approximately $150,000. Their unsecured debts, totaling approximately $80,000, are primarily consumer debts, consisting mostly of credit cards and a deficiency obligation on a boat. With their Chapter 7 bankruptcy petition, they filed Schedules I and J, which contain a number of items relating to their income and expenses.

The United States Trustee for the Northern District of Texas carefully reviewed the Debtors' income and expense budget and filed a motion under Section 707(b) of the United States Bankruptcy Code, which provides for the dismissal of a Chapter 7 case if such case is found to be a "substantial abuse" of the provisions of Chapter 7. In particular, the United States Trustee has focused the Court's attention on the Debtors' continuing 401(k) contributions, 401(k) loan repayments, utility expenditures, projected medical and dental expenses, food budget, home maintenance expenses, and private school tuition for Debtors' eleven year old daughter.

An evidentiary hearing was conducted on the motion on March 25, 2004. Both Debtors testified, and the United States Trustee offered into evidence documents obtained from the Debtors' filings with the Court or supplied to the United States Trustee in discovery.

After considering the testimony offered at the hearing and the other evidence, and taking into account the well-made arguments of the United States Trustee and counsel for the Debtors, the Court concludes that the United States Trustee has met the burden required under Section 707(b). To grant an order for relief in this bankruptcy case would be a substantial abuse of Chapter 7. Accordingly, the case will be dismissed within ten days of this ruling unless the Debtors file a motion to convert the proceedings to a Chapter 13 case.

### The Instant Debtors and Their Financial Situation

Debtor David Rathbun is a district supervisor with a restaurant company. He made $120,000 in 2003, including bonuses. Debtor Joni Rathbun is the assistant head of the early childhood section of a local parochial school. In 2003, she earned in excess of $26,000.

The Debtors own a home that they value in excess of $220,000, which has a mortgage of about $170,000. Their house payment, with taxes and insurance, is almost $2,000. The Debtors were current on the house when they filed, and they have claimed it as exempt. The Debtors pay $866 in installment payments for two vehicles. They were current on the vehicles when they filed their bankruptcy case, and they have claimed them as exempt.

The Debtors owe about $80,000 in consumer debt, mostly for credit cards and a boat. They appear to have experienced financial difficulty for a number years. The testimony suggested that they have had credit issues since their college years. At trial, Debtor David Rathbun was unfamiliar with the term "installment loan," though some of his debts are clearly payable in installments. Debtors also appear

to have poorly planned some of their purchases. For example, the testimony indicated that, in buying their boat, the Debtors focused only on the monthly payment amount and not on the additional expenses of gasoline, insurance, and maintenance that go along with boat ownership. Only recently, with the help of a relative, the Debtors have been able to budget and forecast their income and expenses.

The Debtors' statement of current income reveals that they contribute to David's 401(k), and the equivalent retirement plan with Joni's employer, the aggregate sum of approximately $220 per month. The Debtors are repaying a 401(k) loan at $410 per month.

In their budget contained in Schedule J, Debtors claim that their utilities are $400 for electricity and $150 for water and sewer. The evidence at trial indicates that these amounts in the aggregate are overstated by approximately $100.

The Debtors have budgeted $1,200 for food for them and their eleven year old daughter. The evidence at trial indicates that some of this amount is spent on school lunches and on eating out, or ordering in, many times per month.

The Debtors claim medical expenses of $750. They suggest that this amount primarily relates to their daughter, who has rheumatoid arthritis. However, a review of the actual expenses claimed as medical expenses indicates that much of these claimed amounts are fees and expenses for the daughter's tennis lessons and participation at a local country club and for diving lessons. Debtor Joni Rathbun testified that these activity expenses are akin to medical expenses because they are in lieu of, and cheaper than, the physical therapy, which the daughter would likely undergo, if the daughter had to abandon these exercises, which she likes.

Finally, the Debtors pay $900 monthly in tuition for a private, parochial school for their daughter. Debtor Joni Rathbun testified that she had attended parochial school as a child and that her daughter's attendance at a parochial school was important to the family. She praised the school for its chapel services and for the communion offered each week.

### Section 707(b) and Substantial Abuse

■ Section 707(b) of the Bankruptcy Code provides that the court may dismiss a case filed by an individual Chapter 7 debtor whose debts are primarily consumer debts, if the court finds that the granting of relief would be a "substantial abuse" of the provisions of Chapter 7. See, 11 U.S.C. § 707(b). The Fifth Circuit has not yet decided when a bankruptcy case constitutes a substantial abuse of the provisions of Chapter 7. However, bankruptcy courts in the Fifth Circuit have developed a substantial abuse standard that reflects the "totality of the circumstances" approach set forth in In re Krohn, 886 F.2d 123 (6th Cir.1989). See, In re Fergason, 295 B.R. 96 (Bankr.S.D.Tex.2003); In re Logan, Case No. 02–39177 SAF–7 (Unpub.Mem.Op., Doc. 17, N.D.Tex.2003). Under this analysis, substantial abuse can be predicated upon either a lack of honesty, or want of need. See, In re Krohn, 886 F.2d at 126; In re Logan, Mem. Op. at 3.

■ On the honesty prong, bankruptcy courts look to whether the debtor filed because of unforeseen, or catastrophic events; the debtor's candor and good faith in filing schedules and other documents; and whether the debtor engaged in eve of bankruptcy purchases. Among the factors to consider in determining whether a debtor is needy are: the debtor's ability to repay debts out of future earnings; whether the debtor enjoys a stable source of future income; whether he is eligible for

adjustment of his debts through Chapter 13 of the Bankruptcy Code; whether there are state remedies with the potential to ease his financial predicament; the degree of relief obtainable through private negotiations; and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities. *In re Krohn,* 886 F.2d at 126–27.

### The lack of honesty test

■ The United States Trustee seeks dismissal under Section 707(b) and claims that the Debtors have not been forthright in their pleadings, including their budget. The United States Trustee cites, *inter alia,* the inclusion of tennis fees and diving lessons in the category of "medical" expenses.

Debtor Joni Rathbun testified concerning the expenses for their daughter. She indicated that because of her daughter's medical condition, she felt that these expenses were like medical expenses because they replaced physical therapy.

The lumping together of the expenses for various lessons and sports activities for the daughter with real medical expenses seems to this Court to be somewhat of a stretch. However, the Court observed the demeanor of both Debtors as they testified. They did not appear to the Court, during the trial, to be dishonest. Their honesty is somewhat supported by the fact that they actually disclosed the fees and lessons to the United States Trustee, although such lessons would not really be in the nature of medical expenses.

The United States Trustee has not proved that the Debtors lack honesty.

### The need test

However, the Debtors have the ability to repay at least a portion of their unsecured debt out of future earnings and can reduce their expenses significantly without depriving themselves of life's necessities. They are eligible for Chapter 13 relief, and, with some changes in spending, could fund a plan with a significant dividend to creditors. Thus, the totality of the circumstances shows that Debtors have a lack of need for Chapter 7 relief.

### 1. The 401(k) contributions and loan repayments

The Debtors budget to contribute in excess of $220 to their retirement funds and to repay David's plan $410 per month for a prepetition loan.

■ A debtor's voluntary payment into a pension, savings, retirement, or investment type plan is not a reasonably necessary expenditure for a debtor's maintenance and support. *See, In re Fergason,* 295 B.R. at 96. Such deferred income should be available to pay current debts.

■ This reasoning applies also to the Debtors' repayment of their 401(K) loan. It is unfair to the other creditors for the Debtors to repay essentially themselves while discharging their other debts.

These amounts, which will be reduced because of their tax consequences, may be used to repay creditors.

### 2. Food

■ The Debtors say they spend $1,200 per month on food. Upon investigation, the United States Trustee learned that much of that amount is spent for the daughter at her parochial school and also includes about $5 per day in snacks for the daughter when she is attending tennis matches or practices. In addition, the budget apparently includes a large number of meals eaten out, or taken home, each month. The Debtors argued at the hearing that there was no evidence before the

court from which a ruling could be made that the food expenses were excessive.

At least one court in this district has held that, for a family of two, a food budget of $600 was the correct number. *See, In re Logan*, Case No. 02–39177 SAF–7 (Unpub. Mem. Op. at 10). This Court can do the arithmetic to determine that a food budget of $1,200 for a family of three with a net income of approximately $8,700, or about 14% of the family's monthly cash, is simply too much. This conclusion is buttressed by the fact that the food expenditures include such a large amount allocated for a child on a daily basis.

■ A debtor does not have to starve or even give up altogether meals eaten out. However, a debtor's budget must be a reasonable one. A portion of the Debtors' food budget could be reduced just by careful spending and planning and should be used to repay creditors.

### 3. Utilities

Debtors agreed that they have overstated their actual utility expenses by about $100 per month. Such amounts could be used in repayment of creditors.

### 4. Home maintenance

Debtors indicated in their budget that they planned to spend $320 per month in home maintenance. However, in discovery, the United States Trustee has determined that the Debtors had averaged actual home maintenance expenses of $127 per month, less than half of the budget. Interestingly, much of those expenses were incurred in the maintenance of and supplies for Debtors' swimming pool.

The Debtors' budget for home maintenance includes amounts that could be used to repay creditors.

### 5. Parochial School

There is "a substantial split of authorities as to whether expenses incurred by a debtor to educate a child in a private school 'is reasonably necessary for the maintenance or support of ... a dependent of a debtor.'" *In re Webb*, 262 B.R. 685 (Bankr.E.D.Tex.2001). As noted by Judge Parker in *In re Webb*—

> In the absence of some compelling circumstance, ... [some] courts ... have concluded that, generally speaking, a private school education is not reasonably necessary. *See, e.g. Univest–Coppell Village, Ltd. v. Nelson*, 204 B.R. 497 (E.D.Tex.1996) [rejecting the payment of monthly tuition for a private high school for debtors' daughter when debtors had no particular problem with the education offered at the local public school but who wished to defer to their daughter who insisted upon staying in a private school primarily because she was the first freshman to make the school's cheerleading squad]; *In re Jones*, 55 B.R. 462, 467 (Bankr.D.Minn.1985) ["An expensive private school education is not a basic need of the Debtor's dependents, particularly in view of the high quality public education available in this country...."].

*In re Webb*, 262 B.R. at 690.

However, some courts have allowed private school tuition to be paid by debtors. For example, the court in *In re Burgos*, 248 B.R. 446 (Bankr.M.D.Fla.2000), allowed debtors' private school tuition when the tuition was less than the amount to be paid to unsecured creditors, the debtors had demonstrated strong religious beliefs, and the private school expense could have been reasonably anticipated by creditors at the time credit was extended because the debtors' children had always attended Catholic schools. And, in *Webb*, Judge Parker allowed debtors to continue to pay

for private school education for a child with special needs. *In re Webb,* 262 B.R. 685.

In the present case, Debtor Joni Rathbun testified about the importance of her daughter's parochial school education, but did not provide compelling reasons to justify a $900 per month tuition for a parochial school, other than parental preference.

The Court recognizes that there may be compelling reasons to place a child in a particular school. Because of the importance of schooling to a child, the Court's ruling on whether this kind of expenditure is reasonable and necessary will wait for another day, should the Debtors convert their case to one under Chapter 13. If converted, the proposed tuition would be considered, along with Debtors' proposed distribution to creditors, among other things, in determining whether the tuition amounts should be included in "disposable income" to be paid into a plan. However, more than parental preference will be required to sustain this expenditure. For purposes of this ruling, however, the issue of parochial school tuition will remain an open one because the excessive nature of the other expenses is more than enough to establish relief under § 707(b) in favor of the United States Trustee.

### Conclusion

Debtors have filed for bankruptcy protection because they have over-extended themselves in consumer debt. They seek a discharge of almost $80,000 in credit card and other debt, but hold on to an expensive lifestyle, while they have funds available for repayment of creditors.

Debtors seek to maintain large house and car payments, 401(k) contributions and loan payments, overstated utility budgets, excess food expenditures, excessive "medical" expenses, which are, in reality, activity fees for their daughter's activities, and expensive private school tuition. These things, in and of themselves, are not bad, but, in the aggregate, demonstrate substantial abuse of the Chapter 7 process. Accordingly, the instant case will be dismissed unless the Debtors file a motion to convert their case to Chapter 13 within ten days of entry of this order.

### ORDER DISMISSING CASE

By order of the court dated April 19, 2004 debtors were given 10 days in which to convert their case to one under chapter 13 of Title II or the case would be dismissed. Debtors requested an additional 10 days until May 10, 2004 which request was granted by the court.

Debtors have not converted their case to one under Chapter 13 of Title 11. It is therefore

ORDERED that the case be and hereby is DISMISSED.